1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BETTE BENNETT,

                              Plaintiff,

         v.

UNITED STATES OF AMERICA,

                              Defendant.

CASE NO. C20-5382 BHS

ORDER RENOTING
DEFENDANT'S MOTION TO
DISMISS AND REQUESTING
RESPONSE

This matter comes before the Court on Defendant the Government's motion to

dismiss for lack of subject matter jurisdiction. Dkt. 6. The Court has considered the

pleadings filed in support of and in opposition to the motion and the remainder of the file

and hereby renotes the motion and requests responses on the issue of certification to the

Washington Supreme Court.

## I.   PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff Bette Bennett ("Bennett") is a civilian wife of a Navy service member

who had a history of chronic sinusitis and underwent sinus surgery at Naval Hospital

Bremerton ("NHB") on May 18, 2009. Dkt. 1, ¶¶ 4.1–4.2. Following surgery, Doyle

splints were placed to keep her airway open. *Id.* ¶ 4.2. On May 25, 2009, Bennett alleges

1 that she experienced significant bleeding from her nose and was taken to the NHB

2 emergency room by ambulance. *Id.* ¶ 4.3. She further alleges that the on-call ENT

3 physician, Dr. Kristina Hart, removed the Doyle splints and inserted nasal packing into

4 her nasal cavity. *Id.* ¶¶ 4.4–4.5. When Dr. Hart inserted the nasal packaging, Bennett

5 alleges that she "heard a noise that sounded like cracking, felt acute pain, and passed

6 out." *Id.* ¶ 4.6. Bennett states that she was then operated on and was subsequently

7 discharged from NHB. *Id.* ¶¶ 4.7–4.8.

8  Bennett alleges that following the May 18 incident she developed symptoms

9 including migraines, malaise, light sensitivity, memory loss, and other neurocognitive

10 impairment. *Id.* ¶ 4.9. She states that she saw a series of neurologists and other specialists

11 who were unable to diagnose the cause of her symptoms and that it was not until August

12 2017 that she was treated by a neuropsychologist who found that she suffered deficits

13 consistent with a traumatic brain injury. *Id.* ¶¶ 4.10–4.11. She was ultimately referred to

14 the University of Washington Medical Center to see a specialist in brain injuries and

15 alleges that she was diagnosed in December 2017 with a traumatic brain injury to her

16 prefrontal cortex cause by the nasal pack insertion in 2009. *Id.* ¶¶ 4.12–4.13.

17  On approximately August 3, 2018, Bennett filed a federal tort claim to the

18 Department of Navy, Office of the Judge Advocate General, Tort Claims Unit Norfolk in

19 Norfolk, Virginia. *Id.* ¶ 3.1. Bennett alleges that the Department of the Navy denied her

20 tort claim on October 23, 2019 and informed her that she had six months to file suit. *Id.*

21 ¶ 3.3.

22

1    On April 22, 2020, Bennett filed her complaint alleging that the Government,

2    through the actions of personnel at NHB, negligently inserted the nasal pack and failed to

3    diagnose and treat her brain injury in violation of the Federal Tort Claims Act ("FTCA").

4    *Id.* ¶ 5.1. On July 13, 2020, the Government filed a motion to dismiss for lack of subject

5    matter jurisdiction. Dkt. 6. On August 3, 2020, Bennett responded. Dkt. 8. On August 7,

6    2020, the Government replied. Dkt. 9.

## II.   DISCUSSION

The Government's motion to dismiss for lack of subject matter jurisdiction is

based on Washington State's statute of repose, RCW 4.16.350, and argues that this Court

does not have subject matter over Bennett's claims because she did not file her claim

within the statutorily mandated eight years. Dkt. 6 at 4.

## A.   Standard

Federal courts are presumed to lack jurisdiction, and on a motion to dismiss

pursuant to Federal Rule of Civil Procedure 12(b)(1) the burden of proof is on the

plaintiff to establish subject matter jurisdiction. *Stock West, Inc. v. Confederated Tribes*,

873 F.2d 1221, 1225 (9th Cir. 1989). Motions to dismiss brought under Rule 12(b)(1)

may challenge jurisdiction factually by "disputing the truth of the allegations that, by

themselves, would otherwise invoke federal jurisdiction," or facially by "asserting that

allegations in the complaint are insufficient on their face to invoke federal jurisdiction."

*Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). For facial

challenges, a plaintiff's allegations are assumed as true and the complaint is construed in

his favor. *Id.* However, the plaintiff bears the burden of alleging facts that are legally

1   sufficient to invoke the court's jurisdiction. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th
2   Cir. 2014).

3   **B.   Merits**

4          Here, the Government asserts a facial challenge, arguing that the Court should
5   dismiss Bennett's claims for lack of jurisdiction because the applicable state statute of
6   repose has run. Bennett, on the other hand, argues that the statute of repose which the
7   Government seeks to apply is unconstitutional under the Washington Constitution. Dkt.
8   8. The available authority on this issue is minimal, however. The Court will first set out
9   the statute of repose and then turn to the persuasive authority.

10         **1.    Statute of Repose**

11         The FTCA, under which Bennett brings her claims, establishes its own statute of
12  limitations—the statute of repose's similar and often confused counterpart. Under the
13  FTCA, a plaintiff has two years after a claim accrues to first present the claim in writing
14  to the appropriate federal agency and thereafter has six months to bring suit after
15  receiving the agency's denial. 28 U.S.C. § 2401(b). In the medical malpractice context, a
16  claim under the FTCA accrues and the statute of limitations begins to run when a party
17  knows of the existence of the injury and its cause. *See United States v. Kubrick*, 444 U.S.
18  111, 121–24 (1979). While the FTCA's explicit statute of limitations preempts any state
19  statute of limitations, *see Poindexter v. United States*, 647 U.S. 34, 36–37 (9th Cir. 1981),
20  a FTCA claim may be barred by a state statute of repose, *Augutis v. United States*, 732
21  F.3d 749, 754 (7th Cir. 2013) ("The FTCA does not expressly preempt state statutes of
22  repose" (internal citations omitted)).

1   A statute of repose differentiates itself from its cousin, the statute of limitations, in

2   that statues of repose are not subject to equitable tolling. *Munoz v. Ashcroft*, 339 F.3d

3   950, 957 (9th Cir. 2003); *see also* 4 Charles Alan Wright & Arthur R. Miller, *Federal*

4   *Practice and Procedure* § 1056 (3d ed. 2002). "A statute of repose is a fixed, statutory

5   cutoff date, usually independent of any variable, such as claimant's awareness of a

6   violation." *Munoz*, 339 F.3d at 957. After the expiration of the time limit, a statute of

7   repose "can be said to destroy the right itself." *Underwood Cotton Co., Inc. v. Hyundai*

8   *Merchant Marine (American), Inc.*, 288 F.3d 405, 409 (9th Cir. 2002). "It is not

9   concerned with the plaintiff's diligence; it is concerned with the defendant's peace." *Id.*

10   The Government asserts that Bennett's FTCA claims are barred by Washington's

11   statute of repose. Washington law provides that an action for injuries resulting from

12   health care "in no event shall be commenced more than eight years after said act or

13   omission[.]" RCW 4.16.350(3). The Government argues that Bennett's medical

14   malpractice claim became legally cognizable when she was discharged from NHB after

15   her operation in May 2009 and therefore her cause of action was extinguished eight years

16   later in May 2017. Dkt. 6 at 10. Consequently, because her claim no longer exists under

17   Washington law, the Government argues that the Court cannot take subject matter

18   jurisdiction over the claim. *Id.* at 10–11.

19   **2.      Persuasive Authority**

20   Bennett argues that RCW 4.16.350 is unconstitutional under Washington's

21   privileges and immunities clause and is violative of Washington citizens' protected right

22   to access the courts. However, Washington courts have not directly addressed whether

this particular statute of repose is constitutional. Bennett presents persuasive authority to support her assertion that RCW 4.16.350 violates the Washington constitution.

       **a.**      **Privileges and Immunities Clause**

Article I, section 12 of the Washington Constitution provides that "[n]o law shall be passed granting to any citizen, class of citizen, or corporation other than municipal, privileges or immunities which upon the same terms shall not equally belong to all citizens or corporations." Wash. Const., art. I, § 12. Bennett here urges the Court to find RCW 4.16.350 unconstitutional because it does not pass Washington's reasonable grounds test.

Indeed, the Washington Supreme Court has held that a previous iteration of RCW 4.16.350 violated the state privileges and immunities clause and was unconstitutional. *DeYoung v. Providence Med. Ctr.*, 136 Wn.2d 136, 150 (1998). In *DeYoung*, the court analyzed the eight-year statute of repose under a rational basis standard and held that the classification of medical malpractice claims which were subject to the statute of repose did not bear a rational relationship to the purpose of the statute. *Id.* at 144, 147. While the supreme court acknowledged that compelling a defendant to answer a stale claim is a substantial wrong and that setting an outer limit to the discovery rule is an appropriate legislative goal, the court held that the statute of repose did not satisfy rational basis. *Id.* at 150. Because the statute only applied to a "minuscule number of claims[,]" the relationship between the classification of medical claims and the legislative goal was too attenuated to pass rational basis. *Id.* Consequently, the Washington Supreme Court held RCW 4.16.350 to be unconstitutional. *Id.*

1    In 2006, the Washington State Legislature subsequently reenacted RCW 4.16.350

2 in direct response the supreme court's concerns in *DeYoung*. Laws of 2006, ch. 8, §§ 301

3 & 302 ("The purpose of this section and section 302, chapter 8, Laws of 2006 is to

4 respond to the court's decision in *DeYoung v. Providence Medical Center* . . . ."). While

5 the text of the statute did not change, the legislature amended the purpose for the statute

6 of repose. *Compare* RCW 4.16.350 (1971) *with* RCW 4.16.350 (2006). The new purpose

7 section states that "[w]hether or not the statute of repose has the actual effect of reducing

8 insurance costs, the legislature finds it will provide protection against claims, however

9 few, that are stale, based on untrustworthy evidence, or that place undue burdens on

10 defendants." Laws of 2006, ch. 8, §§ 301 & 302. Moreover, the legislature explained that

11 "[i]n accordance with the court's opinion in *DeYoung*, the legislature further finds that

12 compelling even one defendant to answer a stale claim is a substantial wrong, and setting

13 an outer limit to the operation of the discovery rule is an appropriate aim." *Id.*

14    Since the 2006 amendment, the Washington Supreme Court has not addressed the

15 constitutionality of RCW 4.16.350. In *Unruh v. Cacchiotti*, 172 Wn.2d 98 (2011), the

16 defendant sought to apply the eight-year statute of repose retroactively to a medical

17 malpractice claim. *Id.* at 116. However, no statute of repose existed in 1999: the supreme

18 court in *DeYoung* struck down the previous version of the statute in 1998 and the

19 legislature reenacted the statute in June 2006. *Id.* at 117. The supreme court held that the

20 repose period began to run from the date of legislative enactment and was not retroactive.

21 *Id.* at 118. The plaintiff's claims were therefore not barred by the statute of repose, and

22

1    the supreme court did not address whether the statute of repose violates the privileges and

2    immunities clause. *Id.* at 118 n.15.

3          With a lack of authority from Washington courts on whether the reenacted RCW

4    4.16.350 violates the privileges and immunities clause, Bennett argues that this Court

5    should find *Schroeder v. Weighall*, 179 Wn.2d 566 (2014), persuasive. Dkt. 8 at 3–4. In

6    *Schroeder*, the plaintiff challenged the constitutionality of a statute which eliminated

7    tolling of the statute of limitation for minors in the context of medical malpractice claims.

8    179 Wn.2d at 569. The supreme court addressed whether the statute violated the

9    privileges and immunities clause, applying the two-part privileges and immunities test.[1]

10   Focusing on whether there was a reasonable ground for granting immunity from certain

11   medical malpractice claims, the supreme court analyzed the law "to determine whether it

12   *in fact* serves the legislature's stated goal." *Id.* at 574 (emphasis in original) (internal

13   citation omitted). Unlike rational basis review, the two-part test does not permit

14   hypothesizing facts and requires that the law "be justified in fact as well as theory." *Id.* at

15   575. Because there were no legislative facts in the record to support the stated goal, the

16   supreme court held that there were no reasonable grounds for granting immunity and that

17   the statute violated the privileges and immunities clause. *Id.* at 577.

18

19

20
          [1] The Washington Supreme Court no longer applies a rational basis test following its
21   decision in *Grant Cnty. Fire Prot. Dist. No. 5 v. Cty. of Moses Lake*, 150 Wn.2d 791, 812 (2004)
     (*Grant Count II*). After *Grant County II*, the supreme court applies a two-part test for privileges
22   and immunities analysis: first, the court determines whether the law grants a privilege or
     immunity, *id.* at 812, and second, if yes, the court asks whether there is a reasonable ground for
     granting that privilege or immunity, *id.* at 731.

1      Here, Bennett argues that *Schroeder* is applicable to RCW 4.16.350 because its

2  amended legislative purpose does not include any "new facts or evidence showing that

3  the repose period '*in fact* serves the legislature's goal.'" Dkt. 8 at 7 (quoting *Schroeder*,

4  179 Wn.2d at 574); *see also id.* at 7 n.3 (noting that counsel could not locate any

5  additional legislative findings or materials). Additionally, Bennett argues that the

6  legislative purpose of the challenged statute in *Schroeder* is identical to RCW 4.16.350's

7  legislative purpose and, because no facts exist to support the stated purpose, there are no

8  reasonable grounds for the statute of repose. *Id.* at 7.

9      The Government, on the other hand, argues that the *Schroeder* court did not

10  question or overrule the legislature's goal but rather determined that the challenged

11  statute did not rationally satisfy that goal. Dkt. 9 at 4. The statute of repose does in fact

12  serve its legislative purpose, according to the Government, because here it would

13  preclude the Government from answering "a stale claim that is now eleven years old." *Id.*

14  at 3. RCW 4.16.350, therefore, is based on reasonable grounds and does not violate the

15  privileges and immunities clause. Moreover, the Government argues that the Washington

16  Supreme Court presumably upheld RCW 4.16.350 in *Unruh. Id.* at 5. However, the

17  supreme court explicitly stated that it did not reach the constitutionality issue because the

18  statute of repose was inapplicable in the case. *See Unruh*, 172 Wn.2d at 118 n.15.

19      It therefore remains unclear, in light of *Schroeder*, whether the eight-year statute

20  of repose violates Washington's privileges and immunities clause.

21

22

### b.     Access to Courts

Bennett additionally argues that RCW 4.16.350 is unconstitutional because it infringes upon a plaintiff's right to access the courts. The Washington Constitution affords the right of access to the courts, Wash. Const., art. 1, § 10, for it is "the bedrock foundation upon which rest all the people's rights and obligations." *John Doe v. Puget Sound Blood Ctr.*, 117 Wn.2d 772, 780 (1991). Here, Bennett argues that the eight-year statute of repose violates a plaintiff's right to access the courts because "it has the effect of extinguishing a cause of action before it even accrues." Dkt. 8 at 9. This creates an impossible burden on certain plaintiffs' abilities to bring a cause of action, according to Bennett.

The Washington Supreme Court has not addressed whether a medical malpractice statute of repose violates access to the courts provisions of the state constitution. In *DeYoung*, because the supreme court found that the previous iteration of RCW 4.16.350 violated the privileges and immunities clause, the supreme court declined to reach the plaintiff's argument that the statute also unconstitutionally infringed on the right to access the courts. 136 Wn.2d at 150. But the Government asserts that at least one Washington court has held that a statute of repose does not violate a right of access to courts. *See 1519-1525 Lakeview Blvd. Condominium Ass'n v. Apartment Sales Corp.*, 101 Wn. App. 923, 933–37 (2000) (holding that a construction statue of repose did not violate the right of access to the courts). Beyond these two cases, however, Washington case law is limited as to whether statutes of repose violate the right to access the courts.

1    Thus, Bennett turns to other jurisdictions to support her argument that medical

2 negligence repose statutes are unconstitutional. *See, e.g.*, *McCollum v. Sisters of Charity*

3 *of Nazareth Health Corp.*, 799 S.W.2d 15, 18–19 (Ky. 1990) (holding that a Kentucky

4 medical malpractice statute of repose violated open courts provisions of the state

5 constitution); *Nelson v. Kruzem*, 678 S.W.2d 918, 922–23 (Tex. 1984) (holding that the

6 challenged statute was unconstitutional because it cut off a cause of action before a

7 plaintiff could be aware of harm). However, some of the authority that Bennett cites for

8 the proposition that other jurisdictions have found statutes of repose to violate access to

9 the courts has been overruled. *See Estate of Makos v. Wis. Health Care Fund*, 564

10 N.W.2d 662 (Wis. 1977), *overruled by Aicher ex rel. LaBarge v. Wis. Patients Comp.*

11 *Fund*, 613 N.W.2d 849 (Wis. 2000); *Hardy v. VerMeulen*, 512 N.E.2d 626 (Ohio 1987),

12 *overruled by Ruther v. Kaiser*, 983 N.E.2d 291 (Ohio 2012). Bennett also acknowledges

13 that Florida has upheld a medical statute of repose as constitutional and did not find that

14 the statue violated the access to courts provision of the state constitution. *See Carr v.*

15 *Broward Cnty.*, 541 So.2d 92, 95 (Fla. 1989).

16    The Government asserts that Bennett did not address the nuance of the statutes of

17 repose in the persuasive authority she cites to and that she fails to acknowledge that

18 numerous states have upheld constitutional challenges to statutes of repose. Dkt. 9 at 6.

19 The Government argues that many states have enacted statutes of repose for medical

20 negligence or malpractice claims and that other jurisdictions have rejected similar access

21 to courts constitutional challenges. *See Methodist Healthcare Sys. of San Antonio, Ltd.,*

22 *LLP v. Rank*, 207 S.W.3d 283, 288–89 (Tex. 2010) (providing an overview of medical

malpractice statutes of repose and constitutionality from around the country). Since there is only persuasive authority on the issue of access to the courts, it remains unclear to the Court whether RCW 4.16.350 is constitutional.

In sum, having reviewed the parties' arguments and cited authority, the Court finds a lack of clarity remains whether RCW 4.16.350 violates the Washington constitution. Without knowing the constitutionality of the statute, the Court may not reach the other arguments the parties present.

**C.    Certification**

When there is no controlling Washington Supreme Court precedent on issues of state law, the Court is bound to apply the law as it believes the Washington Supreme Court would under the circumstances. *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938). "If there be no decision by [the state's highest] court then federal authorities must apply what they find to be the state law after giving 'proper regard' to relevant rulings of other courts of the State." *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465 (1967). "Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940).

However, another option is available to the Court. Rather than guessing what the Washington Supreme Court would hold, the Court may certify the question to the Washington Supreme Court for review. Under Washington law:

> When in the opinion of any federal court before whom a proceeding is pending, it is necessary to ascertain the local law of this state in order to dispose of such proceeding and the local law has not been clearly determined, such federal court may certify to the supreme court for answer the question of local law involved and the supreme court shall render its opinion in answer thereto.

RCW 2.60.020. As noted by the United States Supreme Court, certification saves "time, energy, and resources and [perhaps most importantly] helps build a cooperative judicial federalism." *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974).

As it stands, the Court sees the questions for certification as follows:

(1)     Are there reasonable grounds under *Grant County II* for granting immunity under RCW 4.16.350?

(2)     Does the statute of repose therefore violate the privileges and immunities clause of the Washington State Constitution, art. 1, sec. 12?

(3)     Does RCW 4.16.350 unconstitutionally restrict a plaintiff's right to access the court?

Before certifying the questions, the Court will afford the parties the opportunity to address whether the questions should be otherwise stated.

## III.  ORDER

Therefore, it is hereby **ORDERED** that the Clerk shall renote the Government's motion to dismiss for lack of subject matter jurisdiction, Dkt. 6, for the Court's October 12, 2020 calendar. The parties may submit simultaneous briefing that includes their proposed question for certification no later than October 12, 2020.

Dated this 1st day of October, 2020.

BENJAMIN H. SETTLE
United States District Judge

ORDER - 13